UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GENTILLY, LLC                                          CIVIL ACTION

VERSUS                                                    NO. 23-262

STATE FARM FIRE AND CASUALTY                SECTION "R"
COMPANY

## ORDER AND REASONS

Before the Court is defendant State Farm Fire and Casualty Company's ("State Farm") opposed[1] motion for partial summary judgment on plaintiff's bad faith claims.[2]  The Court grants the motion.

## I.    BACKGROUND

The Court has reviewed the record and determines the undisputed facts are as follows.  This case arises out of alleged damage to plaintiff Gentilly, LLC's ("Gentilly) insured commercial development, the Gentilly Shopping Center ("GSC").  State Farm insured the property under the business-owners commercial policy that scheduled the insured property as 13 different spaces.[3]  The policy covered accidental direct physical loss to the

---

[1]    R. Doc. 63.
[2]    R. Doc. 56.
[3]    R. Doc. 56-4 ("Certified Policy") at 5–7.

property (ACPC), subject to certain exclusions and limitations including wear and tear.[4]  The policy does not cover interior rain damage "unless the building . . . first sustains damage by a Covered Cause Of Loss to its roof, outside walls, or outside building glass through which the rain . . . enters."[5]

On September 7, 2021, GSC submitted a claim to State Farm for damage to its insured property caused by Hurricane Ida.[6]  On September 16, State Farm and Gentilly mutually agreed to inspect the property on September 28, and on September 27, Gentilly contacted State Farm to advise it that, because of the number of buildings involved, the inspection would take more than one day.[7]  The September 28 inspection occurred as planned, with State Farm and plaintiff's public adjuster, Logan Rodgers, in attendance.[8]  They inspected the exterior of building 10, Capital One, and building 4, Dialysis Clinic, Inc. ("DCI"), but were unable to inspect their interiors because the buildings were locked.[9]  The parties agreed to continue the inspections based on their availability, and on October 14 and 15, the inspection was completed as planned.[10]  State Farm finalized its first estimate

---

[4]     *Id.* at 23.
[5]     *Id.* at 24.
[6]     R. Doc. 63-1 ("Statement of Uncontested Facts") at 2.
[7]     *Id.*
[8]     *Id.*
[9]     *Id.*
[10]    R. Doc. 86-3 ("Hume Affidavit") at 2.

on November 10, 2021, and issued a payment on the same day for $120,706.62.[11]

In the following weeks, State Farm asked for an additional inspection to gather more information about the roof of the DCI building and the interior of the Capital One building.[12]  This second inspection took place on November 22, 2021.[13]  State Farm tendered $41,014.08 for interior damage the next day.[14]

On December 9, 2021, plaintiff's public adjuster informed State Farm that Capital One and DCI were not paying rent because the buildings sustained too much damage.[15]  On December 16, 2021, State Farm issued a payment of $116,007.30 for loss of rent from these two tenants.[16]

On January 21, 2022, Gentilly submitted a $158,992 estimate to State Farm for the replacement of the roof of the Capital One building.[17]  Plaintiff's public adjuster asked State Farm to perform an additional inspection of the building's roof and informed defendant that he would soon submit his own

---

[11]     *Id.*
[12]     *Id*
[13]     *Id.*
[14]     *Id.*
[15]     Statement of Uncontested Facts at 3.
[16]     *Id.*
[17]     *Id.* at 3–4.

proposed estimate of repairs.[18]  This reinspection took place on February 16 and 18 and covered the Capital One and DCI buildings, as well as buildings 3, 5, 6, 7, and 13.[19]  State Farm reported some deterioration and damage, and noted that the Capital One building's roof had been replaced and repairs had been made to the DCI building's roof.[20]  The parties conducted another inspection of six other buildings, buildings 1, 2, 8, 11, 12, and 13, on March 16, 2022.[21]  Ultimately, State Farm determined that this round of inspections confirmed its previous scope of loss.[22]

Although plaintiff argues in its brief that its public adjuster, Rodgers, submitted a satisfactory proof of loss package to State Farm on February 24, 2022,[23] the record reflects that Rodgers attempted to submit this package,[24] but State Farm asked Rodgers to submit it in a different format because it could not access the documents.[25]  Plaintiff cites no evidence to dispute this assertion.  On March 29, 2022, Rodgers provided State Farm invoices indicating that Gentilly paid Nations Roof $158,992 to replace the Capital

---

[18]     *Id.*
[19]     Hume Affidavit at 3–4.
[20]     *Id.*
[21]     *Id.* at 4.
[22]     *Id.*
[23]     R. Doc. 63 at 4–5.
[24]     R. Doc. 63-7.
[25]     Hume Affidavit at 5.

One building's roof and $191,691 to replace the DCI building's roof.[26]
Rodgers also produced his estimate of $3,360,660.19 to replace the roofs of
all 13 buildings.[27]  This estimate did not explain why every roof required
replacement or detail the damage sustained.[28]  State Farm had previously
determined that any covered damage to the roofs of all of the buildings
except Capital One was repairable, as opposed to necessitating
replacement.[29]  State Farm revisited its decision on the scope of loss on the
DCI building's roof and confirmed that, in its opinion, the roof could be
repaired.[30]

On May 25, 2022, State Farm authorized its adjuster to retain an
engineering firm to evaluate the claimed losses related to Hurricane Ida
following Rodgers's estimate.[31]  On June 2, 2022, State Farm engaged
Forensic Analysis & Engineering Consultants ("FAEC") to conduct this
evaluation.[32]

---

[26]    *Id.* at 5.
[27]    *Id.*; *see* R. Doc. 48-6 ("Rodgers Estimate").
[28]    *See* Rodgers Estimate.
[29]    Hume Affidavit at 5.
[30]    *Id.*
[31]    R. Doc. 63 at 10.
[32]    R. Doc. 56-7 at 1 ("FAEC Report").

Gentilly filed suit on August 29, 2022, in Louisiana state court to recover for alleged breaches of its insurance contract and bad faith.[33]

FAEC did not inspect the property until September 7, 2022,[34] and issued a report on September 22.[35]  State Farm contacted FAEC on June 13, 2022, to check on whether the inspection had been scheduled.[36]  State Farm learned from FAEC that its designated engineer became ill or injured, and it was arraigning for a replacement.[37]  It represented to State Farm that the inspection would be scheduled within the next two weeks.[38]  State Farm's file reflects that it informed plaintiff's public inspector of this development by voicemail.[39]  Then, the second designated engineer informed plaintiff's public adjustor at the last minute that the inspection scheduled for August 15, 2022, was canceled because he declared himself unqualified to inspect the loss.[40]  Based on the FAEC report, State Farm found no additional covered damages attributable to Hurricane Ida and issued no supplemental payments at the time.[41]

---

[33]    R. Doc. 1-1.
[34]    FAEC Report at 2.
[35]    *Id.* at 1.
[36]    R. Doc. 79-2.
[37]    *Id.*
[38]    *Id.*
[39]    *Id.*
[40]    R. Doc. 63-9 at 2.
[41]    Hume Affidavit at 5.

On March 29, 2023, State Farm received another estimate and a report from Gentilly regarding the damages to GSC.[42] The estimate was from Property Damage Consultants ("PDC") and was for replacing the roofs of all thirteen buildings.[43]  The estimate was in the amount of $12,509,747.72.[44] This estimate did not explain why the roofs required replacement or outline the damage caused by the storm.[45]   The report was from Gentilly's engineering firm, Robert L. Wright & Associates, Inc. ("Wright"), and it addressed the damage to the Capital One building.[46]  This report included damage not included in State Farm's estimate, notably an issue related to the HVAC unit on the roof.[47]  State Farm retained an HVAC company to inspect this HVAC issue, but Gentilly did not respond to repeated attempts by the company to schedule an inspection.[48] On April 19, 2023, State Farm declined payment on the Rodgers estimate and the PDC estimate, and issued a supplemental payment of $19,887.22 for the additional damage noted in the Wright report.[49]

---

[42]     *Id.* at 6.
[43]     *Id.*; *see* R. Docs. 48-8, 48-9, and 48-10 ("PDC Estimate").
[44]     PDC Estimate
[45]     *See id.*
[46]     Hume Affidavit at 6; *see* R. Doc. 63-13 ("Wright Report").
[47]     Hume Affidavit at 6; Wright Report at 4–5.
[48]     Statement of Uncontested Facts at 7.
[49]     R. Doc. 56-5 at 1; Hume Affidavit at 6.

On June 20, 2023, plaintiff submitted a report from an engineering firm, Childress Engineering ("Childress"), on the damage caused by Hurricane Ida.[50] This report documented damage to eight of GSC's buildings and recommended at a high-level various repairs and replacements.[51] State Farm determined that the report was not satisfactory proof of loss because it did not identify the buildings it inspected and contained a nonspecific opinion that the buildings suffered damage from Hurricane Ida and provided a general recommendation for repairs.[52]

On April 17, 2024, State Farm retained Kevin Hahn, with Quick & Associates, Inc., ("Hahn") to provide a second opinion on the scope of loss.[53] On May 3, 2024, Gentilly submitted a third estimate prepared by Jon Pruitt with Addison Raley ("the Pruitt estimate").[54] This estimate, totaling $10,682,971.24, provided brief summaries of the work the contractor could do but did not outline what damage GSC sustained from Hurricane Ida or explain why that work should be done.[55] Plaintiff argues that its three reports provide a complete picture when taken together: the Childress report

---

[50]    Hume Affidavit at 6–7; *see* 48-3 ("Childress Report").

[51]    *See* Childress Report at 2–6.

[52]    Hume Affidavit at 6–7; *see* Childress Report.

[53]    R. Doc. 56-12 at 2–3 ("Hahn Report").

[54]    Hume Affidavit at 7; *see* R. Doc. 48-1 ("Pruitt Estimate").

[55]    *See* Pruitt Estimate.

provides the causation opinion, the PDC estimate outlines the damages, and the Pruitt estimate is the construction quote for the outlined damages.[56]

State Farm's Hahn report was finalized on August 23, 2024.[57]  In compiling the report, Hahn reviewed the property, multiple photos, and Gentilly's expert reports and estimates, including the PDC estimate, the Childress report, and the Pruitt estimate, among other evidence.[58] The Hahn report found a broader scope of loss attributable to Hurricane Ida than the previous FAEC estimate.[59]  State Farm retained JS Held to inspect the shopping center and create a financial estimate in line with the scope of loss as determined by Hahn's findings.[60]  JS Held completed this estimate on September 18, 2024, and it exceeded the amount of loss estimated by State Farm based on the FAEC report.[61] On October 10, 2024, State Farm tendered Gentilly the difference between the JS Held estimate and the estimate based on the FAEC report, which amounted to $370,204.66.[62]

---

[56]    R. Doc. 63-1 at 9.

[57]    Hahn Report at 1.

[58]    *Id*. at 3.

[59]    Hume Affidavit at 8; *see* Hahn Report.

[60]    Hume Affidavit at 8.

[61]    *Id.*

[62]    *Id.*; R. Doc. 56-6.

State Farm now moves to dismiss plaintiff's bad faith claims.[63]   It argues that it has timely issued payments consistent with the opinions of its experts, and that it had a reasonable basis for disputing the damages it did not pay.[64]   Plaintiff opposes the motion, asserting that there is a genuine issue of material fact about the timeliness of State Farm's initial payment, that there was an undue delay in retaining an engineer to inspect the property, and that the October 10 tender is per se evidence of bad faith.[65]  The Court considers the motion below.

## II.    LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness*

---

[63]    R. Doc. 56.
[64]    *Id.* at 3.
[65]    R. Doc. 63 at 3.

*Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075 (noting that the moving party's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence" (citations omitted)). "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by

submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for resolution. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III. DISCUSSION

This dispute was removed to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332.[66] When jurisdiction is based on diversity, the Court applies the substantive law of the forum state. *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014).

Louisiana Revised Statute Sections 22:1892 and 22:1973 govern bad faith insurance claims under Louisiana law.[67] "The purpose of these penalty

---

[66] R. Doc. 1.

[67] La. R.S. § 22:1973 was repealed, and La. R.S. § 22:1892 was significantly amended, by Act No. 3 of the 2024 Regular Session, effective July 1, 2024. *See* Act No. 3 of the 2024 Regular Session, Senate Bill No. 232. However, in Louisiana, "[i]n the absence of

statutes is to 'provide remedies to insureds whose insurance claims are improperly handled or to whom payment is unreasonably delayed.'" *Bourg v. Safeway Ins. Co. of La.*, 300 So. 3d 881, 888–89 (La. App. 1 Cir. 2020) (quoting *Lee v. Sapp*, 234 So. 3d 122, 128 (La. App. 4 Cir. 2017)).

Under Section 22:1892, a claimant is entitled to penalties if, after satisfactory proof of loss, the insurer fails to pay a claim within thirty days, and the failure is deemed "arbitrary, capricious, or without probable cause." La. R.S. § 22:1892(B)(1)(a) (2023). To establish a cause of action under Section 22:1982, a claimant must show that "(1) an insurer has received satisfactory proof of loss, (2) the insurer failed to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause." *Guillory v. Lee*, 16 So. 3d 1104, 1126 (La. 2009).

Section 22:1973 imposes a duty of good faith and fair dealing on an insurer to "adjust claims fairly and promptly and to make a reasonable effort

---

contrary legislative expression, substantive laws apply prospectively only." La. Civ. Code art. 6; *see Bourgeois v. A.P. Green Indus., Inc.*, 783 So. 2d 1251, 1257 (La. 2001). Because there was no legislative expression in the Act to make it retroactively applicable, and because Section 22:1973 is a substantive law, the Court makes an Erie guess that its repeal applies prospectively. As this case was filed in August 2022 and removed in January 2023, Section 22:1973 and the prior version of Section 22:1982 still apply.

to settle claims with the insured or the claimant, or both." La. R.S. §
22:1973(A) (2023). The statute subjects the insurer to damages and
additional penalties if (1) it receives satisfactory proof of loss, (2) it fails to
pay a claim within sixty days after receiving the proof, and (3) the failure was
arbitrary, capricious, or without probable cause. La. R.S. § 22:1973(B)–(C)
(2023).

Satisfactory proof of loss is proof that is "sufficient to fully apprise the
insurer of the insured's claims." *Louisiana Bag Co. v. Audubon Indem. Co.*,
999 So. 2d 1104, 1119 (La. 2008) (quoting *McDill v. Utica Mut. Ins. Co.*, 475
So. 2d 1085, 1089 (La. 1985)); *see Katie Realty, Ltd. v. Louisiana Citizens
Prop. Ins. Corp.*, 100 So. 3d 324, 331 (La. 2012) ("[P]roof of loss necessarily
means proof sufficient to establish the amount due on an insurance claim.").
"[P]roof of loss is a 'flexible requirement to advise an insurer of the facts of
the claim,' and that it need not 'be in any formal style.'" *Id.* (quoting *Sevier
v. U.S. Fid. & Guar. Co.*, 497 So. 2d 1380, 1384 (La. 1986)). Additionally,
"arbitrary, capricious, or without probable cause" is interpreted to mean
"vexatious," indicating a refusal to pay that is "unjustified" and "is not based
on a good-faith defense." *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d
1012, 1021 (La. 2003). This analysis "depends on the facts known to the
insurer at the time of its action." *Id.*

14

Plaintiff asserts three arguments in support of its bad faith claim. First, plaintiff argues that State Farm's forty-three-day delay in its first payout, from its initial inspection on September 28, 2021, to its initial payment on November 10, 2021, amounts to bad faith.[68] Second, plaintiff argues that State Farm's acted with bad faith in neglecting to have an engineer inspect the property for a year after Gentilly filed its claim on September 7, 2021.[69] Third, plaintiff argues that State Farm grossly under-evaluated the damage, and its most recent payout serves as per se evidence of this fact.[70] None of these arguments holds up.

As to the time period before the first payout, it is uncontested that Gentilly informed State Farm that the inspection would take multiple sessions due to the number of buildings involved and that the parties agreed to inspect the property on September 28, October 14, and October 15.[71] State Farm finalized its first estimate on November 10 and tendered payment on the same day.[72] Though the time between the start of the inspection and the first payout is greater than thirty days, State Farm did not finish the inspection until mid-October or have a finalized estimate until November 10.

---

68    R. Doc. 63 at 9.
69    *Id.* at 6, 10.
70    *Id.* at 14.
71    Statement of Uncontested Facts at 2–3.
72    *Id.* at 3.

State Farm did not finalize the estimate unduly late given that it had to inspect the property over multiple sessions. The delay in issuing a payment was due to the inspectors' availability to schedule the inspections,[73] and State Farm issued its estimate within thirty days of completing its inspection. There was no evidence that State Farm engaged in vexatious conduct to hamper or delay the inspection or payout; the timeline played out because of limitations on both sides' availability.

Plaintiff's second argument also fails. Plaintiff argues that State Farm's delay of one year in retaining and sending an engineer to the property amounts to bad faith.[74] Plaintiff cites no authority or evidence for the proposition that good faith always requires insurers to have engineering estimates to evaluate property damage claims.[75] State Farm retained FAEC in June after it received the estimates of plaintiff's public adjuster on March 29 that differed from State Farm's scope of loss.[76] While FAEC did not inspect the property until September, the record does not reflect that the delay was caused by vexatious conduct by State Farm. The record reflects that FAEC appointed an engineer who became ill,[77] appointed another

---

[73]    Statement of Uncontested Facts at 2.
[74]    R. Doc. 63 at 6, 10.
[75]    *See id.* at 10–14.
[76]    FAEC Report at 1; Hume Affidavit at 5.
[77]    Hume Affidavit at 5; R. Doc. 79-2.

engineer who, at the last moment, declared himself unqualified,[78] and had to appoint a third engineer who inspected the property. These events do not reflect purposeful delays or obstructive conduct by State Farm. Further, the September inspection did not delay a payment. The report did not expand the scope of loss and was issued eight months before Gentilly's Childress report,[79] which is Gentilly's only report that stated a causation opinion. Additionally, State Farm was not sitting on its hands during this year—it was constantly receiving reports and estimates from plaintiff and responding to those reports by reinspecting the property or adjusting the amount of loss.[80]

Finally, plaintiff argues that State Farm's most recent payment of over $370,000 is per se evidence of bad faith because it demonstrates that State Farm under-scoped the damage at the outset of the claim.[81] This payout does not amount to bad faith. Defendant's actions were consistently in line with

---

[78]   R. Doc 63-9 at 2.

[79]   FAEC issued its report in September 2022, FAEC Report at 2, and Gentilly submitted the Childress report to State Farm in June 2023, Hume Affidavit at 6–7.

[80]   *See* Hume Affidavit at 2 (issuing a payment within thirty days of the initial inspection; issuing payment for loss of income within a week of discovering two tenants were not paying rent), 5 (retaining an engineering firm after receiving a different scope of loss from the Rodgers estimate), 6 (timely tendering a supplemental payment after receiving the Wright report); 8 (timely tendering additional payments to Gentilly after receiving a greater scope of loss from its retained expert, JS Held).

[81]   R. Doc. 63 at 14.

17

its expert appraisals. *Cf. Louisiana Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1122 (La. 2008) ("While Audubon may have arguably been justified in withholding payment early on, Audubon was not justified in continuing to withhold payment after its own experts rendered reports showing damage well in excess of the policy limits for the stock and building losses."); *see 2715 Marietta, LLC v. Axis Surplus Ins. Co.*, No. CV 22-3292, 2024 WL 493300, at *5 (E.D. La. Feb. 8, 2024) ("[T]he competing expert opinions regarding the cause of the damage and amount of Plaintiff's alleged loss go to the merits of Plaintiff's underlying insurance claim, not the bad-faith claim."); *see also Treigle v. State Farm Fire & Cas. Ins. Co.*, No. CV 22-581, 2023 WL 3569828, at *5 (E.D. La. May 19, 2023) (dismissing bad faith claims where the conflicting opinions of the parties' experts created "legitimate doubt . . . as to whether Plaintiff's losses occurred as a result of" a covered loss). Further, State Farm was not dilatory in payment after the scope of loss was determined. When its inspector returned an estimate, State Farm paid the amount due within thirty days. *See Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1023 (La. 2003) ("State Farm's handling of the file cannot be evaluated by hindsight. . . . [T]hat State Farm subsequently tendered the full UM limits is immaterial; State Farm presented a reasonable defense for

18

the timetable in which it tendered payment."). The final payout does not indicate arbitrary or capricious behavior.

Though the payout process was protracted by the scope and complexity of the insured loss, plaintiff fails to raise a genuine issue of material facts indicating that State Farm's actions were arbitrary, capricious, or without probable cause. Because there is no evidence that defendant engaged in vexatious conduct in evaluating and paying plaintiff's claim, the Court grants summary judgment on plaintiff's bad faith claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for partial summary judgment on plaintiff's bad faith claims. The Court orders these claims DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this  30th  day of December, 2024.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE